## CORE v. WILSON ET AL.

DEMURRER.—*Argumentative General Denial.*—A ruling upon a demurrer to paragraphs of an answer that are no more than an argumentative general denial (the general denial being on file) cannot be made available as error.

PROMISSORY NOTE.—*Relation of Parties to Each Other.*—Suit by A. against B. and C., as makers, and D. and E., as indorsers, of a promissory note payable to D.   In a cross complaint C. alleged that he, and D. and E., were sureties for B.   D. and E., in a cross complaint, alleged that they were accommodation indorsers for B. and C.   Issues were joined on the cross complaints.

*Held,* that the relation of the parties on the note to each other was a proper subject of inquiry under the issues joined.

*Held,* also, under the evidence, that C. was the surety of B., and as between himself and D. and E., he was liable for the payment of the note prior to D. and E.

SAME.—*Waiver of Demand and Notice.*—A waiver of demand of payment, and notice of non-payment, contained on the face of a promissory note, does not change the relative rights and liabilities of the parties as to each other.

APPEAL from the Johnson Common Pleas.

DOWNEY, J.—The Second National Bank of Franklin, Indiana, sued Alexander and Core as the makers, and Fesler and Wilson as indorsers, of a promissory note payable to Fesler, at the said bank, and indorsed by him and Wilson.   Fesler and Wilson filed a cross complaint, alleging that they were indorsers for Alexander and Core, and asking that judgment might be rendered against said Alexander and Core as principals, and against them as indorsers only.   To this cross complaint Core filed a general denial.   Core also filed a cross complaint, in which he alleged that he received no part of the proceeds of the note, and that the note was executed by Alexander as principal, and Core, Fesler, and Wilson as his securities.   This was denied by Fesler and Wilson.

Judgment was rendered against all the defendants in favor of the bank, and the court found that Alexander was principal in the note, that Core was his security, and that Fesler and Wilson were accommodation indorsers for Alexander and Core, and made an order that the sheriff first levy on and exhaust the property of Alexander, then next that of Core, before he should levy on that of Fesler and Wilson.

Core *v.* Wilson *et al.*

No question was or is made with reference to the correctness of the judgment in favor of the bank, but Core moved the court to grant him a new trial as to the issues made upon the cross complaints, for the reasons, first, the finding of the court is not sustained by sufficient evidence; and, second, because the finding is contrary to law. This motion was overruled, and exception was properly taken, and the evidence set out in a bill of exceptions.

The errors assigned call in question the correctness of a ruling of the court in striking out a part of the third paragraph of the cross complaint of Core. We are not able to see that this assignment involves the merits of the question in controversy. The question was fully before the court upon the issues, without that part of the cross complaint in question.

The second and third errors assigned are the overruling of the demurrers of Core to the second and third paragraphs of the answer of Fesler and Wilson to his cross complaint. We do not regard these paragraphs as at all material to the question which was sought to be, and was, presented. The cross complaint and the general denial of it involved the whole question as to whether the parties occupied the relation of co-sureties for Alexander or not. The special paragraphs were no more than argumentative denials, and it was not an available error to overrule the demurrers to them, no more than it would have been to have sustained them.

Upon the main question which was presented by the motion for a new trial, we have no doubt. In *Wilson* v. *Stanton*, 6 Blackf. 507, it is said by the learned judge who delivered the opinion of the court: "Had the note taken up by Stanton been what is called business paper, regularly transferred by Stanton to Wilson and by him to the bank, there would not be the slightest doubt as to the rights and liabilities of the respective parties. Each indorser would have placed his name upon the note, knowing that he thereby rendered himself conditionally liable to every sub-

sequent holder, and that he had his recourse against every antecedent party, for the whole amount which he might be obliged to pay. Contribution would have been out of the question. Is there any reason why the same principles should not be applied to accommodation paper? We see none. When a man is requested to place his name upon such paper, the object is to give it additional credit. He complies or refuses, as he judges compliance to be safe or unsafe; and this he does in reference to the security which the instrument already possesses. At least, this is the fair presumption in the absence of all explanatory evidence. This subject was brought directly before the supreme judicial court of Massachusetts, in *Church* v. *Barlow,* 9 Pick. 547; and it was decided that there was no distinction between the rights and liabilities of indorsers of business and accommodation paper; and that the second [first] indorser of the latter, who had paid the money due, could not sue the first [second] indorser for contribution. And such is our conclusion, viewing the accommodation indorser merely as such.''·

It appears that Alexander became insolvent, and an instrument was prepared and signed by a number of persons, including Core, Wilson, and Fesler, which stated, that for the purpose of enabling Alexander to pay his indebtedness in full, the parties thereto agreed to pay on demand to a trustee to be appointed by a majority of the creditors, the amounts set opposite to the names of the signers, on condition, first, that Alexander should convey, or cause to be conveyed, to the trustee all his estate held by his wife or children, to be by the trustee converted into money and applied to the payment of the debts of said Alexander; second, that said Alexander should pay, or secure to the entire satisfaction of his creditors, the full amount of his indebtedness; third, that any sum thus subscribed should be applied in payment of any claim held by the subscriber thereof against said Alexander, or for which he might be liable as security or otherwise for said Alexander. Core, Fesler, and Wilson, each for himself, signed this paper; Core affixing to his

Core *v.* Wilson *et al.*

name the sum of three thousand five hundred and fifty dol-lars, Fesler one thousand four hundred dollars, and Wilson two thousand dollars.    It also appears that they each sub-scribed such amount expecting that it would be cancelled and satisfied by the amount which they were liable, or might become liable, to pay, in consequence of being upon the note in question.    It is claimed by counsel for the appellant that by signing this paper, Fesler and Wilson are estopped to say that they were not co-sureties with him on the note. We do not see upon what principle they could be estopped. If they were ultimately made liable on the note and had the money to pay, they would be entitled to have the amount so paid applied in satisfaction of their subscription.    If they were not so made liable on the note, they would, we suppose, have to pay their subscription in money to the trustee, if the subscription was valid and binding.    We think it may be in-ferred, from the evidence, that Core was not regarded by Fesler and Wilson as certainly solvent and safe at the time, and that they may have signed the paper in question as a means of inducing Alexander to apply the property under his control to the payment of his debts, and thus shield themselves from any contingent liability.    But their liability on this paper, or their not being liable upon it, cannot affect the question as to whether they were co-sureties with Core or not.    He was clearly the surety of Alexander, and, as be-tween himself, and Fesler and Wilson, was liable to the payment of the note prior to them. It does not appear what was done with this agreement, whether Alexander ever com-plied with its conditions or not, or whether any of the amounts subscribed were or were not ever paid.

Again, it is contended by counsel for the appellant, that because the note contained upon its face a waiver of any de-mand of payment and notice of non-payment, thereby, in legal effect, the indorsers became bound with Core, who signed the note on its face, as co-sureties with him.    It is now quite common for bills of exchange and promissory notes to contain a stipulation that the drawers and indorsers

waive demand, protest, and notice, but it has not been understood that such stipulation changed in any way the relative rights and liabilities of the parties to the paper. We think this position cannot be maintained.

The last objection urged is, that the court improperly rendered the judgment relating to the order in which the parties were liable to execution. There is nothing in this objection. It was said by this court, in *Lacy* v. *Lofton*, that as between the parties liable upon the instrument, the form of it is not conclusive as to their relations with each other, but the actual relations may be shown to be other than they appear upon the face of the contract, and as between themselves their rights will depend upon the actual fact. 26 Ind. 324.

It is also decided in the same case that accommodation parties to such commercial paper are within the meaning of the statute relating to the remedies of sureties against their principals. So in the case under consideration, we have no doubt the relation of the parties to each other on the note was a proper subject of inquiry, under the issues formed, for the purpose of having the usual judgment rendered with reference to the order in which the sheriff should go to them with the execution for the payment of the debt. The question of fact having been tried, we see no reason, after an examination of the evidence, to disturb the finding of the court; and there is no objection, that we can see, to the form of the judgment, unless it should have shielded Wilson from liability until the property of Fesler had been exhausted, as he was an indorser subsequent to Fesler. But no complaint is made by Wilson as to this.

The judgment is affirmed, with costs.

*S. P. Oyler* and *D. Howe,* for appellant.

*T. W. Woollen, C. Byfield, G. M. Overstreet,* and *A. B. Hunter,* for appellees.