**UNITED STATES of America,**

v.

**Robert S. DILLON, Raymond J. Quinn, Dominick A. Maria, Michael Mina, and Anthony A. Abbate, Defendants.**

United States District Court
S. D. New York.
April 22, 1960.

**542**

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for the Government, by George F. Roberts, Asst. U. S. Atty., New York City.

Charles T. Murphy, Harrison, N. Y., for defendant, Robert S. Dillon.

Robert Mitchell, New York City, for defendants, Raymond J. Quinn, Dominick A. Maria, Michael Mina and Anthony A. Abbate.

WEINFELD, District Judge.

This case has been pending for almost eight years. The indictment was returned June 12, 1952. It has been on the calendar on innumerable occasions, only to be postponed from time to time.

In June of 1952, four defendants, who were indicted with those now on trial, pleaded guilty; one defendant pleaded guilty in March of this year. Not a single one of these defendants has as yet been sentenced, although Rule 32(a) of the Rules of Criminal Procedure provides sentence shall be imposed without unreasonable delay.

The case was sent out to trial to this part on April 13, 1960. Before a jury was impanelled, the defendants moved for the dismissal of the indictment on the ground that their constitutional right to a speedy trial under the Sixth Amendment of the Federal Constitution had been violated; they also moved for a dismissal under Rule 48 of the Federal Rules of Criminal Procedure, which provides that if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment.

At the time the motion was made, it appeared that neither the Government counsel nor defense counsel had the full facts with respect to the reason for numerous delays and postponements that had taken place during the eight-year period. The Court requested more specific information, and, pending submission of such data, reserved decision on the motion, and ordered the case to proceed to trial.

The Government presented its evidence and rested its case this morning. The Court is stating what is an obvious fact, that those witnesses who were called and who, incidentally, were (with the exception of the Postal and Railroad officials) alleged co-conspirators, suffered not only from lapse of memory, faulty memory, uncertainty as to events and persons present, but several readily admitted that statements made to various Assistant United States Attorneys in charge of the investigation were false; that testimony given before the Grand Jury which investigated this matter was false and did not jibe with their current testimony, and, to cap it all, one co-conspirator overnight changed his reference as to which defendant on trial had allegedly participated in one of the overt acts set forth in the conspiracy count and also as to the date of its occurrence.

His testimony tended to implicate the Assistant United States Attorney as the one who allegedly was responsible for the overnight change in version. However, it developed that he had told an utterly false story as to how it came about that he had switched his story overnight, and under the Court's questioning, admitted that he had in fact sworn falsely before this very jury.

Normally, these variations, inconsistencies and admitted false swearing would not necessarily, take the case from a jury, and under authorities in this Circuit, the Court would be constrained to allow the jury to make the factual determination of the issues so presented. But in this case there is the added element of the extraordinary delay, for which no adequate explanation has been offered, which seems in very large measure to compound the nature of the false and uncertain testimony given by these witnesses.

Inspector McLennan, who testified before the Court this morning, acknowledged that from the very inception of the indictment this case was ripe for

trial. Indeed, specifically he stated that within two months it was ready to go forward with all the evidence that the Government had at its command and available for presentation to a jury.

The function of this Court is not to assay or appraise responsibility for this inordinate or shocking delay in bringing a case to trial. Its immediate concern is with the motion made by the defendants based upon such delay.

The Government, in urging denial of the motion, stresses that the defendants have not moved up to the time of trial to dismiss this indictment because of the prosecution's inaction in bringing the case to trial. However, the affidavits and the court records indicate that on the numerous occasions that the case was on the calendar, the defendants were ready to proceed to trial, but that the Government was not. On many of such occasions, the defendants, all of whom were wage earners, were required to, and did, appear in court at a loss of daily income. Notwithstanding the defendants' readiness, the case was repeatedly postponed at the Government's request. The instances when postponements were at the request of any defendant were rare, and due either to illness of counsel, or a special event, such as a graduation ceremony of the daughter of a defense attorney.

There is no reason, and, indeed, none has been suggested, why the case was not advanced to trial during the long period of eight years. Commencing with the initial investigation, it had been assigned from one Assistant United States Attorney to another, until, at various times during those eight years, eleven prosecutors, at one point or another, had charge of the matter.

The Court has made inquiry of the Clerk of the Court as to what cases have been disposed of from the time this indictment was returned. It finds that of the 88 indictments returned during the month of June, 1952, the only one still pending is this current case; that subsequent thereto, there were 7,977 in-dictments returned, and, of these, all except 546 have been disposed of. These figures, in and of themselves, obviously reflect a shocking delay.

On the issue as to whether or not these defendants have waived their right, their constitutional right, to a prompt trial, the Court is not unaware of the ruling in this Circuit in United States v. Lustman, 258 F.2d 475. This case referred to United States v. Kaye, 251 F.2d 87, where a similar contention was made by the Government and upheld by the Court of Appeals. But in the Kaye case, the Court specifically noted (1) that the indictment was only four and a half years old at the time it was brought to trial; and (2) "No motion was made by defendant at the beginning of trial for dismissal because of delay."

In this case such a motion has been made. Indeed, the defendants urge they made this motion orally in the Calendar Part some six weeks ago, but there seems to be some dispute about this.

Be that as it may, I do not conceive it to be the duty of a defendant to press that he be prosecuted upon an indictment under penalty of waiving his right to a speedy trial if he fails to do so. It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial. If a prosecutor fails to do so, the defendant cannot be held to have waived his constitutional right to a speedy trial.

A waiver of a constitutional right is not to be lightly inferred. It must be clearly and intentionally made. Indeed, every reasonable presumption is indulged against a waiver of fundamental rights. Cf. Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680.

There is no basis upon this record for holding that the defendants waived their constitutional right to a speedy trial.

Taking into account the admittedly false swearing by Government wit-

nesses, their lapses of memory, which is entirely understandable, even if there were no false swearing, the absence of any adequate excuse for the unreasonable delay in the prosecution of the indictment, the Court is satisfied that not only have the defendants been deprived of their right to a speedy trial, but the failure to afford it to them has tended to deprive them of a fair trial, and has prejudiced them in meeting the charge against them.

The Court grants the motion and directs the acquittal of the defendants.